IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENISE JANINE A.,

           **Plaintiff,**

    v.                   **Civil Action 2:22-cv-04167**
                        **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

           **Defendant.**

## OPINION AND ORDER

Plaintiff, Denise Janine A., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 11) and **AFFIRMS** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively filed her application for DIB on November 3, 2020, alleging disability beginning November 15, 2018. (R. at 161–71). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on March 1, 2022. (R. at 35–67). The ALJ denied benefits in a written decision on March 30, 2022. (R. at 12–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 25, 2022 (Doc. 1), and the Commissioner filed the administrative record on February 17, 2023. (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 11 and 12).

## A.    Relevant Hearing Testimony

The ALJ summarized the reports presented to the administration and testimony from Plaintiff's hearing:

> [Plaintiff] has alleged disability because of multiple sclerosis. She also alleged problems with learning and remembering and problems with her hands and legs because of her multiple sclerosis (Ex. 2E/2). [Plaintiff] claimed that her multiple sclerosis had affected her cognitive abilities and that it had worsened over the last five years in a February 17, 2021, Function Report (completed with the assistance of her mother). She asserted her body and mind cannot function like a normal person and claimed there was no job she could take that did not require learning new systems and procedures. She stated her brain felt cloudy all the time and she could not learn computer systems, memorize passwords, or follow written directions. She also reported problems with lifting, squatting, bending, standing, walking, kneeling, climbing stairs, memory, concentrating, understanding, and following instructions (Ex. 8E).
>
> At the hearing, [Plaintiff] testified she was unable to work now because her mind cannot think correctly with her multiple sclerosis. She also testified that she just cannot do it anymore because she does not feel comfortable medically with charts and because of her tremors. According to her, she had been unable to learn how to do new things like passwords and codes on the computer when she had been working. She also claimed the daycare center had locked her out of the computer because it took her too long to figure it out. She did not have this problem way back when she had been nursing. She also testified she still has trouble remembering to do things around the house when her multiple sclerosis gets worse and her legs get stiff and her hands shake all the time. She testified that she has tremors in her hands all the time, right greater than left, and she cannot write. She also claimed she has trouble holding on to coffee cups and larger items like when she is unloading the dishwasher. She also stated that she has stiffness in her legs and lots of intermittent numbness in both feet. She estimated she could stand in one place for 12 minutes before she got dizzy and has to sit down. [Plaintiff] also indicated that the temperature affects her and she can do more in the cooler weather. She indicated that the heat makes her dizzy. She also claimed she has flareups or times when her symptoms are worse but could not remember the last time it has happened. With respect to her right shoulder, [Plaintiff] testified that she can still lift and carry things but not much, maybe a gallon of milk. No problems reaching in front but overhead able but is much harder. While she indicated she has problems with falling or tripping occasionally she testified she does not use a cane or assistive device. [Plaintiff] testified that her medications cause headaches, stiffness and soreness.

(R. at 22).

B.      **Relevant Medical Evidence:**

The ALJ also discussed Plaintiff's medical records and symptoms regarding her

multiple sclerosis:

> [Plaintiff]'s medical history is significant for multiple sclerosis (Exs. 1F/5). She has
> reported symptoms to include muscle and leg cramps and pain cramps, numbness,
> difficulty with gait or walking, imbalance or falling, loss of bladder control, heat
> induced fatigue, neuropathy and in coordination with writing (Exs. 3F/2; 11F/1).
>
> Examinations have found abnormal tiptoe, heel walk and tandem gait and brisk
> biceps, patellar and Achilles reflexes bilaterally (Exs. 3F/4). January 8, 2019
> magnetic resonance imaging demonstrated no significant change in moderate to
> severe supratentorial and infratentorial white matter signal abnormalities,
> compatible with a reported multiple sclerosis. There were multiple periventricular
> black holes with moderate atrophy. There was no restricted diffusion to suggest
> active demyelination noted (Ex. 6F/10).
>
> This objective evidence certainly supports physical limitations. However, the
> totality of medical evidence does not support the severity and frequency of
> limitations as alleged by [Plaintiff]. In addition to infusion therapy (Ex. 1F),
> [Plaintiff] has treated her multiple sclerosis with appropriate medications, including
> Avonex (Exs. 12F/23). However, the medical evidence reveals that [Plaintiff]'s
> medications have been relatively effective in controlling [Plaintiff]'s symptoms.
> The record documents [Plaintiff]'s general denial of neurologic symptoms and/or
> denial of worsening neurological symptoms on several occasions (Exs. 2F/21; 3F/3,
> 11).
>
> Moreover, her doctor has noted her multiple sclerosis has been inactive and non-
> progressing for at least one year with treatment on several occasions, including on
> November 12, 2019, November 4, 2020, February 2, 2021, and August 17, 2021
> (Exs. 2F/2; 3F/4, 8, 12; 12F/15). Additionally, several of her reported problems,
> including fatigue, balance, gait dysfunction, focal weakness, poor leg endurance
> heat sensitivity and neuropathic pain have been described as minimal to mild or
> mild to moderate and examinations were relatively unremarkable on several
> occasions (Exs. 2F/1, 3, 5). For example, her fatigue was noted as minimal to mild
> without significant interference in routine activities on November 12, 2019.
>
> While problems with balance was noted, her gait dysfunction was noted as mild
> without falls or need for assistance as well. Additionally, minimal focal weakness
> and poor leg endurance, mild to moderate heat sensitivity, minimal to mild
> neuropathic pain, numbness and tingling was noted in the right foot. Examination
> found no bradykinesia, dyskinesia, tremors, chorea, athelosis, or myoclonus. There
> was normal bulk, tone and motor strength in the bilateral upper and lower
> extremities in all areas assessed. Coordination was normal as well. Reflexes were

brisk in the bilateral biceps and patellar; plantar reflexes were downgoing bilaterally; Hoffman's reflex was absent bilaterally and frontal release signs were absent bilaterally. Sensation was normal to pinprick, temperature, vibration, position and light touch. treating physician Dr. Mankowski opined her relapsing multiple sclerosis was stable on Avonex without signs of relapse or progression of disability since her last visit. He also noted her most recent magnetic resonance imaging of her brain was stable and without signs of active inflammation. Noting no concerning adverse effects associated with immune based treatment, he continued her medications as prescribed (Ex. 2F/1-2).

March 18, 2020, magnetic resonance imaging showed stable findings compatible with diagnosis of multiple sclerosis, there was no interval new or progressed lesions and no enhancing lesions to suggest active demyelination (Ex. 6F/13). She denied on numbness, tingling, burning, weakness, muscle twitching, muscle cramps, difficulty with gait or walking, tremor, incoordination, imbalance or falling or ataxia on May 19, 2020. Neurologic, cranial nerve, motor examinations were normal in all areas assessed and her coordination, gait and station were normal as well (Ex. 3F/9). [Plaintiff] denied myalgias, neurologic weakness and numbness, heat or cold intolerance and mental status changes on October 8, 2020. She was in no acute distress, comfortable, calm and relaxed. She was alert and oriented, cognitive examination was grossly normal, cranial nerves 2-12 were grossly intact, her gait was normal, and no tremor was noted (Ex. 2F/21-23).

[Plaintiff] reported she engaged in moderate exercise and was able to walk without restrictions on February 2, 2021 (Ex. 12F/13). March 8, 2021, magnetic resonance imaging showed no significant change of severe supratentorial and infratentorial white matter signal abnormalities, compatible with reported multiple sclerosis and no abnormal enhancement or restricted diffusion to suggest active demyelination (Ex. 6F/16-17). [Plaintiff] was alert and oriented and cognitive examination and cranial nerves 2-12 were grossly intact, her gait was normal and no tremor was noted on March 18, 2021 (Ex. 4F/3). [Plaintiff] reported being independent in her activities of daily living on April 26, 2021. She also denied any falls in the past year prior to January 1, 2021 (Ex. 7F/15).

While she reported numbness, dizziness, difficulty with gait or walking and imbalance or falling during an August 17, 2021, appointment with Dr. Mankowski, [Plaintiff] indicated her multiple sclerosis had not worsened since her last neurologic evaluation. She also denied bladder/bowel symptoms, tingling, burning, confusion, memory loss, aphasia, slurred speech, word finding difficulty, difficulty with comprehension, convulsions, jerking, weakness, vertigo, tremor, ataxia, sleep difficulty and dysphagia. She also denied muscle twitching, muscle cramps, muscle aches, muscle weakness and arthralgias. She was alert and oriented to year, month, day, date , location and situation. There was no dysarthia or aphasia, she followed verbal commands and visual cues well, her speech was fluent and clear, and she appropriately named objects. Her recent and remote memory and delayed word recall were intact. Motor examination found no bradykinesia, asterixis, myoclonus,

4

resting, postural or action/intention tremor. There was normal bulk and tone, full range of motion and strength in the bilateral upper and lower extremities in all areas assessed. There was normal sensation to pinprick, temperature, vibration, position and light touch. Romberg's test was negative and there was no extinction to double simultaneous stimulation appreciated. Reflexes in the bilateral biceps, patellar and Achilles were brisk and normal in the bilateral triceps and brachial radialis. Plantar reflex was normal bilaterally and there was no clonus on the right or left. Coordination was normal. Additionally, while tiptoe, heel walk and tandem gait were abnormal [Plaintiff] ambulated independently and her gait, station, posture and arm swing were normal. Dr. Mankowski noted [Plaintiff]'s multiple sclerosis as being inactive and non-progressive for at least one year and continued her medications as currently prescribed (Ex. 12F/11-15).

While it is reasonable to conclude that [Plaintiff] experiences some limitations as a result of her multiple sclerosis and associated symptoms, the evidentiary record simply fails to support her allegations of severe and disabling symptoms that preclude all work.

(R. at 23–24).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2025 and has not engaged in substantial gainful activity since November 15, 2018, her alleged onset date of disability. (R. at 17). The ALJ determined that Plaintiff suffered from the severe impairments of multiple sclerosis, migraine headaches, mild neurocognitive disorder, and generalized anxiety disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 18).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ladders; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching and kneeling; no crawling; no work at unprotected heights; no work around hazardous machinery; no requirement for commercial driving as part of job duties; avoiding concentrated exposure to extreme cold, heat, humidity, wetness and pulmonary irritants; avoiding avoid concentrated exposure to vibration and to loud construction level noise; avoiding concentrated exposure to flashing strobing lights such as you might see at a concert. Mentally, [Plaintiff] is limited to simple routine repetitive work, with no work with the general public as part of routine job duties; only occasional work with

coworkers and supervisors; only occasional decision making; only occasional changes to the work setting; no tandem work, end of day work goals versus strict hourly production requirements, the work should be of a variable rate; and no fast-paced production assembly line work or work where the machine is setting the pace.

(R. at 21).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (R. at 22).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff is unable to perform her past relevant work as a licensed practical nurse or as a day care worker. (R. at 28). Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as table worker, bench assembler and addresser. (R. at 29). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since November 15, 2018. (R. at 30).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007)

(citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.    DISCUSSION

In her Statement of Errors, Plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ failed to fully address her upper extremity limitations.  (Doc. 11 at 4–6).  Plaintiff also contends that the ALJ erred at step three of the sequential analysis by failing to consider whether her multiple sclerosis meets or medically equals Listing 11.09(B).  (*Id.* at 7–12).  The Commissioner counters that the ALJ properly determined that although the findings of both state agency reviewing physicians were persuasive, they were not restrictive enough, and thus, she offered greater exertional and environmental limitations than they did.  In fact, the physical RFC determination was more restrictive than any medical opinion of evidence.  In addition, according to the Commissioner, Plaintiff's multiple sclerosis did not come close to the exacting standard for Listing 11.09(B). (Doc. 12 at 4–20).

### A.    RFC Determination

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. *See also* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical

sources, and (5) prior administrative medical findings.[1]  20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements."  § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important; and the ALJ must explain how they were considered.  § 404.1520c(b)(2).  Though an ALJ may discuss how he or she evaluated the other factors, it is not required.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . "  § 404.1520c(b)(3).

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Notably, the Court's role is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.* at *14.

Here, the ALJ considered the opinions of two experts who reviewed the record. *See* 20 C.F.R. § 404.1513a(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). In addition to being disability experts, the state agency reviewing physicians are also known as neutral sources. *See Lucidov. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("[T]he reviewing physicians . . . have the strongest claims to neutrality."). In February 2021, Scott Bolz, M.D., opined that Plaintiff could perform light exertional work including that she could lift/carry 20 pounds occasionally and 10 pounds frequently; sit about 6 hours in an 8-hour workday; and stand/walk about 6 hours in an 8-hour workday. (R. at 85). Dr. Bolz also found that Plaintiff could frequently balance; occasionally crouch, crawl, stoop, kneel, and climb stairs and ramps; never climb ladders, ropes or scaffolds. (*Id.*). Additionally, Plaintiff should avoid concentrated exposure to cold, heat, and humidity, and avoid all exposure to hazards such as machinery and heights. (R. at 85–86). In July 2021, Steve McKee, M.D. completed a separate review on reconsideration and affirmed Dr. Bolz's restrictions in full. (R. at 94–95).

After analyzing the limitations that Dr. Bolz and Dr. McKee offered, the ALJ explained that their findings were partially persuasive. (R. at 27). *See Blakely v. Comm'r of Soc. Sec*., 581 F. 3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state

agency physicians over [Plaintiff]'s treating sources was not, by itself, reversible error."). Within the course of her decision, the ALJ discussed that their findings were consistent with much evidence of record. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision); *see* 20 C.F.R. § 404.1520c(c)(2) (discussing the factor of consistency in evaluating medical opinion evidence). Indeed, the Court's review of the record shows that Dr. Bolz and Dr. McKee supported their opinions with citation to the record and discussion of the medical evidence. (R. at 81–86, 89–95).

But the ALJ went further. Beyond adopting the opined restrictions, the ALJ determined that greater restrictions in the RFC were required because "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level, as well as evidence in the form of persuasive testimony at the claimant's hearing, consistent with medical evidence in the record, justifies a conclusion that the claimant's impairments are more limiting than was concluded by the state examiners." (R. at 27). In other words, the ALJ added to the list of work limitations. This was acceptable. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition.").

For example, the ALJ explained that later evidence suggested that Plaintiff should be limited to sedentary, rather than light, exertional work. (R. at 21, 27, 85–86, 94–95). Not only did this reduce the amount Plaintiff would be required to lift, carry, push and pull from 20 pounds down to 10 pounds, but it significantly changes the amount of time she would be required to sit, stand and walk. 20 C.F.R. § 404.1513. Rather than be required to stand/walk for up to 6 hours in a day with light work, a reduction to sedentary work involves only standing/walking for up to 2

hours. *Id.* The ALJ also added additional environmental restrictions that Dr. Bolz and Dr. McKee had not assessed, including "no requirement for commercial driving as part of job duties," "avoiding concentrated exposure to . . . pulmonary irritants . . . vibration and to loud construction level noise . . . [and] to flashing strobing lights such as you might see at a concert." (R. at 21).

These limitations show that the ALJ subjected the assessments of the reviewing doctors to proper scrutiny. (R. at 21, 27, 85–86, 94–95). *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (finding that the ALJ subjected a non-examining opinion "to at least some scrutiny" where, inter alia "the ALJ … applied even greater restrictions in this area than [the non-examining doctor] opined were appropriate."). And the ALJ adequately accounted for the gap in time between the date of Dr. McKee's assessment and the ALJ's hearing decision. *See also Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (affirming the Magistrate Judge's decision which noted that "[t]here will always be a gap between the time the agency expert's review the record and . . . the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand"). It also demonstrates that substantial evidence supports the ALJ's RFC determination.

Plaintiff challenges the ALJ's decision by arguing that her multiple sclerosis, tendonitis in her right shoulder, weakness, incoordination, and tremors in her bilateral upper extremities were all documented in the record. (Doc. 11 at 5 (citing R. at 49, 257–67, 319, 321, 348, 431–35). The ALJ considered these records, but the ALJ also considered the many instances when Plaintiff reported mild or no symptoms, including reports of no tremors or struggles with balance. (R. at 23 ("general denial of neurologic symptoms and/or denial of worsening neurological symptoms on several occasions" (citing R. at 279, 306, 310)), R. at 24 (denying "numbness, tingling, burning,

weakness, muscle twitching, muscle cramps, difficulty with gait or walking, tremor, incoordination, imbalance or falling or ataxia" (citing R. at 279–81)). The ALJ also considered and expressly addressed evidence of her shoulder impairment. (R. at 18 ("[W]hile examination has found some decreased [range of motion], there has been no instability or weakness in the shoulder and strength and neurologic sensation has been normal and intact." (citing R. at 360)). More generally, as the ALJ noted, Plaintiff's doctor went so far as to consider Plaintiff's multiple sclerosis as "inactive and non-progressing" several times from November 2019 through August 2021. (R. at 23 (citing R. at 421, 425, 430). Still more, Plaintiff's doctors have noted that medication has been "relatively effective" in treating her symptoms. (*Id.*).

All told, the ALJ's RFC determination has substantial support; Plaintiff just disagrees with it.

### B.  The ALJ's Step Three Finding

Plaintiff also claims the ALJ erred at step three of the sequential analysis by failing to consider whether her severe physical impairment of multiple sclerosis meets or medically equals Listing 11.09, the listing for multiple sclerosis. Specifically, Plaintiff argues that evidence in the record demonstrates that she satisfies the requirements of Listing 11.09(B), and the ALJ erred in failing to specifically analyze the Listing and relevant medical evidence in denying her application.

At step three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant will be found disabled if her impairments meet or equal a listing in the Listing of Impairments. 20

C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 491 (6th Cir. 2010). [Plaintiff] bears the burden of showing that his impairment meets or medically equals a Listing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). And a claimant must satisfy *all* of the criteria to "meet" the listing. 20 C.F.R. § 404.1525(c)(3)*; Rabbers,* 582 F.3d at 653. The listings streamline the agency's decision-making process at step three by identifying those claimants whose impairments are so severe that they would "prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); 20 C.F.R. § 404.1525(a). Plaintiff bears the burden of proving that her condition meets or equals the listing criteria. *See* 20 C.F.R. §§ 404.1512(a), 404.1520(a)(4)(i)-(iv) (noting that claimant bears the burden of production at steps one through four); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (claimant has the burden at step three); *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001).

Relevant here, in order to satisfy Listing 11.09(B), a claimant must have multiple sclerosis accompanied by:

> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.09(B)

In her decision, the ALJ provided the following analysis at step three and determined that Plaintiff's MS does not meet the Listing because:

> … the record does not document the requisite disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities OR marked limitation (see 11.00G2) in physical

functioning (see 11.00G3a), and in one of the following: understanding, remembering, or applying information (see 11.00G3b(i)); or interacting with others (see 11.00G3b(ii)); or concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or adapting or managing oneself (see 11.00G3b(iv)).

(R. at 19).

The Court finds that the ALJ complied with the articulation requirements at step three. *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) ("In the normal course, as a result, the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ."). This is especially true because elsewhere in her decision, the ALJ explained that Plaintiff's abilities exceed what is described in Listing 11.09(B).

For example, the first part of Listing 11.09(B) requires a marked limitation in physical functioning. This is defined as "when your neurological disease process causes persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity. The persistent and intermittent symptoms must result in a serious limitation in your ability to do a task or activity on a sustained basis." 20 C.F.R. App. Subprt. P of 404 § Listing 11.00G2(a). As noted above, the ALJ explained that Plaintiff's treatments were effective (R. at 23 (citing 242–256, 458); Plaintiff "denied neurologic symptoms on several occasions" (R. at 23 (citing 277, 307, 315); and her doctor described her multiple sclerosis as "inactive and non-progressing." (*Id.* (citing 258, 308, 312, 316, 450). And many examinations were relatively unremarkable with fatigue noted to be only "minimal to mild without significant interference in routine activities." (*Id.* (citing 257, 259, 261, 355). Simply put, the relatively unremarkable examinations that the ALJ discussed demonstrate that Plaintiff cannot show "marked limitation in physical functioning" as required by

the first part of the listing.  20 C.F.R. App. Subprt. P of 404 § 11.09(B).

Regarding the second part of Listing 11.09(B), Plaintiff asserts that she has a marked limitation in her ability to understand, remember, or apply information and in her ability to concentrate, persist, or maintain pace based on some impairments noted in a neuropsychological evaluation in September 2021.  (Doc. 11 at 10) (citing R. at 429–35).  But the ALJ adequately articulated why Plaintiff had only moderate limitations in these areas, and her decision has support. The ALJ noted that in Plaintiff's function report, she indicated she could follow written and spoken instructions as long as they were not too complex.  (R. at 19, 20, 236).  She reported that she has the ability to prepare meals, do laundry, clean, and denied needing reminders to take care of personal needs and grooming or to take her medication.  (R. at 19, 20, 233).  Plaintiff was able to drive, and as the ALJ noted, "operating a motor vehicle requires the ability to remember information in order to arrive at one's destination without incident.  Here, the record does not indicate the claimant experienced accidents or confusion on a routine basis when driving."  (R. at 19, 20, 234).

Throughout her decision the ALJ cited evidence demonstrating no more than moderate limitations in both functional areas.  For example,  Plaintiff "denied memory loss, confusion, word finding difficulty or difficulty with comprehension on several occasions."  (R. at 26, 306–307, 310–311, 315, 413–414, 419–420, 423–424).  Likewise, the ALJ documented that Plaintiff's "cognitive dysfunction was noted as mild and her mood as stable."  (R. at 26, 257).  Plaintiff also reported being independent for both basic activities of daily living pertaining to self-care and hygiene as well as instrumental activities of daily living such as appointment management, medication management, financial management, shopping, cooking and driving.  (R. at 26, 429–430).  These day-to-day activities undercut her argument that she is totally disabled.  *See Berry v.*

*Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled."). Both state agency reviewing physicians, Dr. Bolz and Dr. McKee, also expressly concluded that Plaintiff's impairments did not meet or medically equal Listing 11.09 for "Multiple Sclerosis." (R. at 80, 84, 88, 92). *See also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (The Disability Determination and Transmittal forms . . . conclusively establish that consideration by a physician designated by the Commissioner has been given the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) ("Even in a close case in which the myriad medical problems of the claimant are as evident as they are in Dorton's case, the ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient.").

One final point. Plaintiff's citation to the Sixth Circuit's decision in *Reynolds v. Comm' r of Soc. Sec.*, 424 F. App'x 416 (6th Cir. April 1, 2011), does not help her. There, the plaintiff pointed to evidence seeming to establish the criteria of the Listing. Here, Plaintiff has not done so. Instead, she wishes "'the ALJ had interpreted the evidence differently.'" *Lashawn W. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-415, 2022 WL 896788, at *5 (S.D. Ohio Mar. 28, 2022) (quoting *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *rep. & rec. adopted*, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), aff'd, 690 F. App'x 385 (6th Cir. 2017). "While Plaintiff may disagree with the ALJ, the ALJ's findings in this case were well within the zone of reasonable choices." *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

**IV.     CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 11) is

**OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date:   October 20, 2023                          /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE